# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| **Jonathan Campbell; Edgar Hernandez, et. al.,** | )<br>)<br>) |
| **Plaintiffs,** | )<br>)   **CIVIL ACTION NO.:** |
| **v.** | )<br>)<br>) |
| **System Dynamics International, Inc., d/b/a SDI,** | )<br>)<br>) |
| **Defendants.** | ) |

## COLLECTIVE ACTION COMPLAINT

Plaintiffs Jonathan Campbell and Edgar Hernandez, individually and on behalf of all others similarly situated (collectively, the "Plaintiffs"), by and through their undersigned counsel, hereby submit their Complaint against Defendant System Dynamics International d/b/a SDI (the "Defendant") to recover unpaid wages, liquidated damages, interest, reasonable attorneys' fees, and costs under Section 16(b) of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq.* (the "FLSA") and in support thereof, state as follows:

## NATURE OF THE CASE

1. Defendant provides services to the United States Department of Defense ("DoD") with a focus on manned and unmanned aviation training,

1

simulation, operations, maintenance, and logistics both CONUS (within the continental United States) and around the globe.

2. An unmanned aerial vehicle ("UAV"), commonly known as a "drone," is an aircraft without a human pilot aboard.

3. UAVs are a component of an unmanned aircraft system ("UAS") which includes the UAV, a ground-based controller, and a system of communications between the two.

4. Defendant is a subcontractor to other companies that are the primary contractors (the "primes") with the DoD.

5. The contracts between the primes and the DoD require the primes to provide individuals capable of operating a UAS stationed at military locations overseas.

6. The contracts between Defendant and the primes require Defendant to provide those individuals to primes.

7. The primes, in turn, satisfy their contracts with the DoD by placing those individuals at the military's locations overseas.

8. The individuals referenced in the preceding paragraphs are initially hired by Defendant into the position of Air Vehicle Operator ("AVO").

9. Defendant employs AVOs to work on various UAS.

10. Defendant's policy and practice is to deny earned wages and overtime pay to its AVOs. Defendant's failure to pay employees their earned wages and overtime compensation has been deliberate and violates the FLSA.

11. The Plaintiffs are current and former AVOs who were/are not paid full wages for all hours worked or overtime compensation at a rate not less than one and one-half (1.5) times the regular rate at which they were/are employed for work performed beyond the forty (40) hours per workweek, as required by federal law, for at least three (3) years prior to the filing of this collective action. This lawsuit is brought as a collective action under the FLSA to recover unpaid wages and overtime compensation owed to the Plaintiffs.

## JURISDICTION AND VENUE

12. The FLSA authorizes claims by private parties to recover damages for violations of the FLSA's wage and hour provisions. Jurisdiction over this FLSA collective action is based upon 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

13. Defendant is subject to personal jurisdiction in this District as it maintains its principal place of business/headquarters in this District, regularly does business throughout the State of Alabama, and employs the AVOs through its headquarters in Huntsville, Alabama.

14. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c), as Defendant resides in this District and because a substantial part of the events giving rise to the claims herein occurred in this District.

## PARTIES

15. Named Plaintiff Campbell is an adult individual with a domicile in Kennesaw, Georgia. Currently, he's on a deployment in Africa. Though he performed services on behalf of Defendant in Utah, Arizona, and abroad, he was hired by Defendant out of its Huntsville headquarters and, at all times relevant hereto, was employed and directed (in part) out of Defendant's Huntsville headquarters.

16. Named Plaintiff Campbell was employed by Defendant as an AVO from February 2016 until June 2017.

17. Named Plaintiff Campbell was an "employee" of Defendant as that term is defined by Section 203 of the FLSA.

18. Named Plaintiff Hernandez is an adult individual residing in Fayetteville, North Carolina. Though he performed services on behalf of Defendant in Utah and Arizona, he was hired by Defendant out of Huntsville and, at all times relevant hereto, was employed and directed (in part) out of Defendant's Huntsville headquarters.

19. Named Plaintiff Hernandez was employed by Defendant as an AVO from February 2016 until July 2016.

20. Defendant is a foreign incorporated for-profit business formed in Gainesville, Florida. As set forth above, Defendant's corporate headquarters is located in Huntsville, AL.

21. Defendant was/is the "employer" of the AVOs as that term is defined by Section 203 of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

22. Pursuant to 29 U.S.C. § 207, the Named Plaintiffs seek to prosecute the FLSA claims as a collective action on behalf of themselves and all similarly situated persons who are and/or were formerly employed by Defendant since February 7, 2015 (the "Look-Back Period"). As explained below, these current and former employees of Defendant did not receive required overtime compensation at a rate not less than one and one-half (1.5) times the regular rate at which they were/are employed for work performed during the Look-Back Period.

23. The precise number of such persons is unknown, and the facts on which the calculation of that number is based are presently within the sole control of Defendant. Upon information and belief, however, there are at least fifty (50) potential members of the collective action who were/are employed by Defendant during the Look-Back Period, most of whom would not be likely to file individual

lawsuits because they lack adequate financial resources, access to attorneys, or knowledge of their claims.

24. On information and belief, these employees will choose to join the Named Plaintiffs in this collective action against Defendant and opt-in to this lawsuit to recover unpaid wages and other available relief.

25. The Named Plaintiffs will fairly and adequately protect the interests of the putative class and have retained counsel who is experienced and competent in the fields of employment law and collective action litigation such as this.

26. A collective action is superior to other available methods for the fair and efficient adjudication of this lawsuit—particularly in the context of wage and hour litigation like the present action, where the individual plaintiffs likely lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.

27. Furthermore, because the damages suffered by each similarly situated person are relatively small compared to the substantial expense and burden of litigation, it would be virtually impossible for any former or current employee affected by Defendant's unlawful pay practices to pursue relief under the FLSA other than as part of a collective action.

28. There are questions of law and fact common to the members of the collective action which predominate over questions that may affect only individual

members because Defendant has acted on grounds and applied policies applicable to all members. Among the questions of law and fact common to the AVOs, *inter alia*:

    a.    whether Defendant misclassified the exemption status of the AVOs;

    b.    whether Defendant has a policy of misclassifying workers as exempt from coverage of the overtime provisions of the FLSA;

    c.    whether Defendant failed to pay the AVOs wages for all hours worked as well as proper overtime compensation for all hours worked in excess of forty hours per workweek, in violation of the FLSA and the regulations promulgated thereunder;

    d.    whether Defendant failed to pay the AVOs wages for all hours worked as well as proper overtime compensation for all hours while traveling to and from deployments overseas, in violation of the FLSA and the regulations promulgated thereunder;

    e.    whether Defendant disallowed or prohibited time entries to be made by the AVOs;

    f.    whether Defendant improperly paid/pays the AVOs based on time periods other than their workweeks;

    g.    whether Defendant failed to keep accurate and complete time records for all hours worked by the AVOs;

      h.    whether Defendant's violations of the FLSA have been willful or with reckless disregard of the statute;

      i.    whether Defendant is liable for all damages claimed herein including, but not limited to, compensatory, liquidated, interest, costs, and attorneys' fees; and

      j.    whether Defendant should be enjoined from violations of the FLSA in the future.

29.    The Named Plaintiffs know of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a collective action.

30.    If individual actions were required to be brought by each member of the putative class injured or affected, the result would be a multiplicity of actions, creating a hardship to the Named Plaintiffs, the putative class members, Defendant, and the Court.

31.    The members of the FLSA putative class have been damaged and are entitled to recovery as a result of Defendant's common and uniform policies, practices, and procedures.

## STATEMENT OF FACTS

32.    When AVOs are first hired by Defendant, they are brought to headquarters in Huntsville for a three-day new hire orientation. If not previously

determined, Defendant informs AVOs as to which UAS they will be assigned. Hunter and Shadow are two UAS that AVOs may be hired to operate.

33. Defendant decides which UAS contract an AVO will be assigned to based on which of its contracts have open positions that need to be filled.

34. While in Huntsville, AVOs meet with representatives from Defendant's Human Resources Department to commence the employee on-boarding process and discuss their employment.

35. At that time, the AVOs must complete a SDI Employment Application, SDI Employee Information Sheet, Education Verification Request Form, Security Clearance Information Form, and Direct Deposit Authorization Form.

36. Also at that time, the AVOs are instructed to complete an IRS Form W-11 (Hiring Incentives to Restore Employment (HIRE) Act Employee Affidavit) certifying that they have been unemployed or have not worked for anyone more than 40 hours during the 60-day period ending on the date they began employment with Defendant.

37. AVOs are given documentation concerning SDI's Full Time Employee Incentive Benefits and SDI's 401(K) Plan Annual Notice.

38. AVOs are given an Employee Identification Card and are required to pass a drug screen.

39. AVOs are shown how to keep track of their work time and properly record that time in their timesheets.

40. AVOs are told that they will be paid an hourly rate of $28.85 for work performed stateside.  As a result, the AVOs understand that they will be paid for their work learning the UAS and its operation.

41. Defendant does not inform the AVOs that they are classified as "trainees" and, therefore, will not be compensated for all the hours worked stateside.

42. Following the orientation, Defendant transports the AVOs to the stateside location where their assigned UAS is located.

43. The AVOs are required to spend approximately fourteen to sixteen weeks at the site(s) learning the specific UAS and how to operate it.

44. The AVOs spend the first several weeks receiving schoolhouse instruction.

45. Thereafter, the AVOs participate in flight simulation, and then actual flight training on the UAS.

46. Each day the AVOs start at, or before, 8:00 a.m. and end at approximately 4:00-5:00 p.m.  In the evenings, additional time is spent studying.  The AVOs work 10 hours/day, 5 days/week—if not more on occasion.

47. The AVOs enter their time each day in Defendant's Deltek timekeeping system. Defendant's timesheets will show the number of hours worked by each AVO.

48. In typical workweeks while stateside, with the knowledge, permission, and mandate of their superiors and management at Defendant, AVOs work/worked forty hours, work/worked extra hours during such forty-hour weeks, and are/were not properly compensated for extra hours beyond forty hours they work/worked during those forty-hour weeks.

49. Within the Look-Back Period while stateside, AVOs typically work/worked forty hours each workweek, work/worked extra hours during such forty-hour week, and are/were not properly compensated for extra hours beyond forty hours they work/worked during those forty-hour weeks.

50. The sole purpose of the training is for the AVOs to learn the particular UAS so Defendant can place them with the prime that operates that particular UAS.

51. The training is mandatory and essential for the performance of the AVOs' work. If the AVOs do not complete the training they cannot be assigned to the primes and deploy overseas.

52. The training of the AVOs is for the direct and sole benefit of Defendant as the training allows Defendant to fulfill its contractual obligation to the primes by supplying the required number of qualified AVOs.

53. On information and belief, pursuant to its contracts with the primes, Defendant is compensated for providing AVOs who have completed training and are able to deploy. Indeed, Defendant has an obvious interest in hiring more AVOs, having them learn the various UAS and then providing the AVOs to the respective primes.

54. The training for each UAS is unique and specific to that particular UAS.

55. At any given time, Defendant can have subcontracts for various UAS and the training for each of those UAS can be vastly different from training on the others.

56. The UAS-specific training is dissimilar from general teaching in vocational school.

57. Among other things, each and every UAS is distinct in terms of launch and recovery procedures, operating limitations, flight characteristics, emergency procedures, maintenance and periodic inspections, the ground control system (GCS) and its applicable software, datalink type and specifications, payload configurations, emplacement and displacement, and customer product creation.

58. Because training is unique and specific to each respective UAS, the information and skills obtained by the AVOs are neither transferable within the UAV/UAS industry in general nor are they transferable to any other company that does not work with those particular UAS.

59. Because the training is specific and limited to a particular UAS and its use by a specific prime for that prime's contract with the DoD, other than using the general experience obtained from their work with Defendant, the training has no benefit to the AVOs because they cannot use the knowledge and skills learned for that specific UAS elsewhere. The knowledge and skills have a limited shelf life and no utility for the AVOs outside of their employment with Defendant.

60. Defendant's business operations are not impeded by the training that takes place.

61. When the AVOs complete their training, they're flown to the Continental United States Replacement Center ("CRC") at Ft. Bliss in El Paso, TX for processing by the military necessary for them to deploy overseas.

62. At that time, no hiring or new employee paperwork is required because the AVOs already completed all such documentation when they were previously hired and put through the initial on-boarding orientation at the Huntsville headquarters. Indeed, the AVOs were employees when they arrived at the various training sites.

63. Following the one-week processing at the CRC, the AVOs deploy overseas. They are flown by military aircraft to their assigned location abroad where they work with the specific UAS they were trained on.

64. At the end of their deployments, the AVOs are flown back to the U.S. They return to out-process at the CRC, and are then flown by Defendant to their home of record.

## COUNT I
## FAIR LABOR STANDARDS ACT

### (COLLECTIVE ACTION)

65. The Named Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs as though fully set forth herein.

66. Defendant engaged and continues to engage in a widespread pattern, policy, and practice of violating the FLSA, as detailed in this Complaint.

67. At all times relevant hereto, Defendant is and has been an "employer" of the AVOs within the meaning of § 203(d) of the FLSA.

68. At all times relevant hereto, Defendant is and has been an employer/enterprise engaged in interstate commerce and/or the production of goods for commerce within the meaning of §§ 206(a) and 207(a) of the FLSA.

69. At all times relevant hereto, Defendant employed and/or continues to employ the AVOs within the meaning of the FLSA.

70. At all relevant times hereto, upon information and belief, Defendant has had gross revenues in excess of $500,000.00.

71. Each Named Plaintiff consents in writing to be a party plaintiff to this action pursuant to § 216(b) of the FLSA. Each of the Named Plaintiff's written Consent Form is attached hereto and incorporated by reference.

72. Because Defendant willfully violated the FLSA by misclassifying the AVOs and by failing to pay them properly, a three-year (3) statute of limitations applies to such violations pursuant to § 255 of the FLSA.

73. Defendant has willfully and intentionally engaged and continues to engage in a widespread pattern and practice of violating the provisions of the FLSA, as detailed herein, by misclassifying AVOs, thereby failing and refusing to pay the proper hourly wage computation of current and former AVOs in accordance with § 206 and § 207 of the FLSA.

74. In typical workweeks while stateside, with the knowledge, permission, and mandate of their superiors and management at Defendant, the AVOs work/worked forty hours, work/worked extra hours during such forty-hour weeks, and are/were not properly compensated for extra hours beyond forty hours they work/worked during those forty-hour weeks.

75. Within the Look-Back Period while stateside, the AVOs typically work/worked more than forty hours each workweek, work/worked extra hours during such forty-hour week, and are/were not properly compensated for extra hours beyond forty hours they work/worked during those forty-hour weeks.

76. For each workweek, the AVOs record/recorded their hours worked in Defendant's Deltek timekeeping system.

77. Defendant's Deltek timekeeping system will show the many workweeks during which the AVOs work/worked forty hours, work/worked extra hours during such forty-hour weeks, and are/were not properly compensated for extra hours beyond forty hours they work/worked during those forty-hour weeks.

78. Defendant's payroll records will show that the AVOs were not properly paid for the extra hours in excess of forty per workweek for the many workweeks during which they work/worked more than forty hours.

79. At all times relevant hereto, Defendant had and has a policy and practice of refusing to pay wages for all hours worked as well as overtime compensation to the AVOs for their hours worked in excess of forty hours per workweek.

80. At all times relevant hereto, Defendant had and has a policy and practice of requiring the AVOs to perform non-exempt duties without proper compensation and overtime compensation.

81. As a result of Defendant's willful failure to compensate its employees, including the AVOs, at a rate not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of forty hours in a workweek, Defendant has willfully violated, and continues to willfully violate the FLSA.

82. As a result of Defendant's failure to record/report the full amount of time the AVOs worked/work and to compensate them for such time, Defendant has failed to make, keep, and preserve accurate records with respect to each of its employees sufficient to determine the wages, hours, and other conditions and practices of employment in violation of the FLSA.

83. As a result of Defendant's FLSA violations as detailed above, the AVOs have suffered damages by being denied full wages and/or overtime compensation in accordance with the FLSA.

84. Defendant has not made a good faith effort to comply with the FLSA with respect to its compensation of the AVOs.

85. As a direct and proximate result of Defendant's unlawful acts, the AVOs have been deprived of wages and overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, interest, costs, attorneys' fees, and other compensation pursuant to the FLSA.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs Jonathan Campbell and Edgar Hernandez, individually and on behalf of all other similarly situated persons, pray for the following relief:

(A) certification of this action as a collective action brought pursuant to § 216(b) of the FLSA;

(B)    a determination that the practices, policies, and patterns complained of herein are unlawful under the FLSA;

(C)    an injunction against Defendant from engaging in each of the unlawful practices, policies, and patterns complained of herein, including enjoining Defendant from classifying the Plaintiffs as exempt under the FLSA;

(D)    a designation of the Named Plaintiffs as Class Representatives;

(E)    at the earliest possible time, an Order that Defendant be required to give notice, or that the Court issue such notice, to all SDI employees in all locations within the United States during the three (3) years immediately preceding the filing of this action, who are or may be similarly situated to the Named Plaintiffs, informing them that this action has been filed, describing the nature of the allegations, and advising them of their right to opt-into this action if they worked at Defendant but were not paid proper wages and/or full overtime pay and benefits pursuant to § 216(b) of the FLSA;

(F)    an award of damages, in an amount to be determined at trial, including unpaid back-end and front-end wages as well as liquidated damages pursuant to the FLSA and regulations of the U.S. Department of Labor promulgated pursuant to the FLSA;

(G)    penalties available under applicable law;

(H)    pre- and post-judgment interest, as provided by law;

(I) reasonable attorneys' fees and costs of suit, including expert fees; and

(J) such other legal and equitable relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs Jonathan Campbell and Edgar Hernandez, individually and on behalf of all other similarly situated persons, demand a trial by jury on all claims and issues triable as a matter of right by a jury.

RESPECTFULLY SUBMITTED,

/s/ D. G. Pantazis, Jr._____
D.G. Pantazis, Jr. (ASB-3318-172P)
Lacey Danley (ASB-2975-X54S)
Attorneys for Plaintiffs

**OF COUNSEL:**
WIGGINS CHILDS PANTAZIS
FISHER & GOLDFARB, LLC
The Kress Building
301 19th Street N.
Birmingham, AL 35203
(205) 314-0500
dgpjr@wigginschilds.com
ldanley@wigginschilds.com

**Serve Defendant via Certified Mail as Follows**:

System Dynamics International, Inc.
d/b/a SDI
1211 NW 10th Avenue
Gainesville, Florida 32601