IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **JONATHAN CAMPBELL and EDGAR HERNANDEZ,** | ) <br> ) <br> ) |
| **Plaintiffs,** | ) <br> ) |
| v. | ) Case No. 5:18-cv-223-UJH-RDP <br> ) |
| **SYSTEM DYNAMICS INTERNATIONAL, INC.,** | ) <br> ) <br> ) |
| **Defendant.** | ) |

## **MEMORANDUM OPINION**

This matter is before the court on Plaintiffs' amended motion to conditionally certify this case as a collective action. (Doc. # 21). Jonathan Campbell and Edgar Hernandez ("Plaintiffs") claim their employer violated the Fair Labor Standards Act ("FLSA") by failing to pay them for overtime hours at the required time-and-a-half rate. They now seek to conditionally certify a collective action of other similarly situated employees pursuant to 29 U.S.C. § 216(b). Plaintiffs' employer, System Dynamics International, Inc. ("SDI") agrees that conditional certification is appropriate but contests the scope of Plaintiffs' proposed class. After careful consideration, the court agrees with SDI that Plaintiffs' proposed class is too broad and that it should conditionally certify a narrower class of employees, as explained more fully below.

**I.    Background**

Plaintiffs are two former employees of SDI, a private military subcontractor that supplies drone pilots to fly Army drones. (Doc. # 1 at ¶¶ 16, 19; Doc. # 23 at 3). In military parlance, and within the nomenclature of SDI, drone pilots are known as Air Vehicle Operators ("AVOs").

(Doc. # 23 at 3). Their primary function is to operate military drones from a ground control station. (*Id.* at 4).

Over the past three years, SDI has employed several dozen AVOs. (Doc. # 21 at 7; Doc. # 23 at 3). When AVOs are first hired by SDI, they undergo a training period of approximately 14 to 16 weeks at various sites throughout the United States. (Doc. # 1 at ¶ 43). During stateside training, AVOs sometimes work more than 40 hours per week. (Doc. # 9 at ¶¶ 48, 49). After completing training, the AVOs are flown to the Continental United States Replacement Center ("CRC") at Fort Bliss in El Paso, Texas for processing by the military before they deploy overseas. (Doc. # 1 at ¶ 61). Following the one-week processing at the CRC, the AVOs serve on deployments overseas. (*Id.* at ¶ 63). At the end of their deployments, the AVOs are flown back to the United States, where they undergo out-processing at the CRC. (*Id.* at ¶ 64).

In this lawsuit, Plaintiffs claim that SDI violated the FLSA by misclassifying AVOs as exempt from the Act's overtime requirements and failing to pay its AVOs at the required time-and-a-half rate for overtime hours worked while stateside.[1] (*Id.* at ¶¶ 73, 78, 81). SDI acknowledges that, prior to January 1, 2017, it classified AVOs as exempt from the FLSA's overtime requirements. (Doc. # 23 at 5). It did so based on its belief that AVOs meet the "highly compensated employee" exemption of 29 C.F.R. § 541.601. (*Id.*). But in 2017, SDI changed its policy. Effective January 1, 2017, SDI classified AVOs as nonexempt and began paying them a time-and-a-half premium for overtime hours based on the Department of Labor's 2016 decision to raise the minimum compensation for a highly compensated employee. (*Id.*). Plaintiffs now move the court to conditionally certify a collective action consisting of all AVOs employed by

---

[1] Plaintiffs do not contend that they were entitled to time-and-a-half pay for overtime hours worked overseas, and for good reason, since the FLSA does not have extraterritorial application. *See* 29 U.S.C. § 213(f).

2

SDI at any point during the FLSA's three-year limitations period for willful violations of the Act, 29 U.S.C. § 255(a). (Doc. # 25 at 9-10).

**II.     Analysis**

The FLSA permits an employee to maintain a collective action against an employer on behalf of himself "and other employees similarly situated." 29 U.S.C. § 216(b). The Eleventh Circuit has structured a two-step process for determining whether an FLSA case may proceed as a collective action. *See Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001). The first step occurs early in the litigation and requires the district court to determine "whether notice of the action should be given to potential class members" so that they can decide whether to opt in to the lawsuit. *Id.* at 1218. Before facilitating notice, a district court must satisfy itself that there are other employees who (1) desire to opt in to the lawsuit and (2) are similarly situated with respect to both their job responsibilities and their pay provisions. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008). The Eleventh Circuit has described the standard for determining whether employees are similarly situated at this stage as "fairly lenient," *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007), but has made clear that the determination must rest on more than "counsel's unsupported assertions," *Morgan*, 551 F.3d at 1261. Because the certification decision is made early in the litigation, it is "usually based only on the pleadings and any affidavits which have been submitted." *Hipp*, 252 F.3d at 1218.

The first step is known as "conditional certification" because the decision to certify a collective action can be reconsidered in the second step, after the close of discovery. *See Morgan*, 551 F.3d at 1261. This second step is "triggered by an employer's motion for decertification." *Id.* Because discovery will have concluded by the time of the decertification motion, the district court is now better positioned to resolve any factual disputes concerning

whether the class members are similarly situated. *Id.* Consequently, the second step is "less lenient, and the plaintiff bears a heavier burden" in showing that the class members are in fact similarly situated. *Id.*

The parties agree that certification of a conditional class is appropriate in this case. (Doc. # 23 at 3). But they disagree about the scope of the class and the appropriate manner of providing notice to potential class members of their right to join this collective action. Accordingly, the court addresses each of these issues in turn.

### A. The Scope of the Class

Plaintiffs contend that because SDI treats all AVOs similarly with respect to their job duties and pay practices, the conditional class should encompass all AVOs who worked for SDI at any point during the FLSA's three-year limitations period for willful violations. (Doc. # 25 at 4-5). SDI counters that the class should include only those AVOs who both worked for SDI during the three-year limitations period[2] and were hired before January 1, 2017, when SDI began paying AVOs time-and-a-half for any overtime worked. (Doc. # 23 at 8).

At the conditional certification stage, Plaintiffs "bear the burden of demonstrating a reasonable basis" for their claim that AVOs were subject to a common illegal pay policy. *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996) (internal quotation marks omitted). That burden "is not heavy," and Plaintiffs may carry it by making "detailed allegations" that AVOs were subject to a common illegal pay policy. *Id.* Plaintiffs need not conclusively establish their allegations at this point; rather, their allegations need only be

---

[2] SDI agrees that, because Plaintiffs have alleged willful violations of the FLSA, the appropriate limitations period for purposes of certifying the collective action is three years rather than two. (Doc. # 23 at 6); *see also* 29 U.S.C. § 255(a) (establishing a baseline two-year limitations period for FLSA claims and a three-year limitations period for claims arising out of willful violations of the FLSA). But SDI does not concede that it either violated the FLSA or that any violation was willful, and it reserves its right to argue those issues at summary judgment or trial. (Doc. # 23 at 6 n.7).

"supported by affidavits which successfully engage defendants' affidavits to the contrary." *Id.* (internal quotation marks omitted).

The parties disagree about the scope of the proposed class in three areas. The court discusses each below.

### 1. Employees Hired On or After January 1, 2017

Plaintiffs' proposed class is problematic because they have failed to provide detailed allegations or *any* supporting evidence showing that SDI failed to pay AVOs time-and-a-half for overtime hours after December 31, 2016. In fact, there is significant record evidence submitted by both parties showing just the opposite—that SDI began paying AVOs time-and-a-half for overtime beginning in January 2017. That evidence includes the declarations of three members of SDI management with direct knowledge of SDI's pay policies, all of whom testify that SDI began paying AVOs time-and-a-half for overtime beginning in January 2017. (Doc. # 23-1; Doc. # 23-2; Doc. # 23-3). Additionally, SDI submitted the declarations of two AVOs hired in 2017 who testify that SDI paid them time-and-a-half for any overtime they worked while stateside. (Doc. # 23-4; Doc. # 23-5). SDI also submitted two pay stubs from those employees showing that they were paid time-and-a-half for overtime worked in 2017. (Doc. # 23-4 at 5; Doc. # 23-5 at 5). Finally, contemporaneous emails from SDI human resources submitted by Plaintiffs confirm SDI's January 2017 change in pay policy. (Doc. # 21 at 54).

Plaintiffs purport to "neither accept nor agree" that SDI began paying AVOs time-and-a-half for overtime in 2017. (Doc. # 25 at 6). But Plaintiffs have failed to support their contention with anything that approaches evidence which "successfully engage[s]" SDI's contrary evidence. *See Grayson*, 79 F.3d at 1097. Indeed, the only evidence Plaintiffs have offered on the issue are the declarations of the two named plaintiffs, Jonathan Campbell and Edgar Hernandez. However,

nothing in those declarations contradicts the substantial record evidence that shows SDI began paying AVOs time-and-a-half for overtime hours in 2017. To be sure, the declarations state that SDI failed to pay Plaintiffs time-and-a-half for overtime they worked while stateside and that SDI applies their pay policies uniformly to all AVOs. (Doc. # 21 at 39, 47). But even taking those statements as true (and, to be clear, the court does), they do not rebut the evidence of SDI's 2017 change in pay policy since both Plaintiffs were hired and completed pre-deployment stateside training in 2016, before SDI reclassified AVOs as nonexempt and began paying them time-and-a-half for overtime. (Doc. # 21 at 33, 36, 42). The declarations simply do not assert that SDI failed to pay Plaintiffs or any other AVOs a time-and-a-half premium for overtime worked in 2017.

     Moreover, it is not as though Plaintiffs were unaware of SDI's claimed 2017 change in pay policy or lacked the opportunity to test this claim during discovery on class certification issues. In its sworn responses to one of Plaintiffs' interrogatories, SDI made clear that AVOs hired before January 1, 2017 were not paid a premium rate for overtime hours worked stateside but that AVOs hired after January 1, 2017 were so paid. (Doc. # 21 at 78). Unlike the typical case where the parties have conducted little to no discovery at the conditional certification stage, *see Anderson*, 488 F.3d at 952, the parties here have already engaged in significant discovery dealing solely with certification issues. (Doc. # 15 at ¶ 4). So far, Plaintiffs have served, and SDI has responded to, two requests for admission, eight interrogatories, and ten requests for production. (Doc. # 23 at 10). Thus, Plaintiffs have not been without opportunity to obtain evidence calling into question the veracity of SDI's 2017 change in pay policy. Because Plaintiffs have wholly failed to produce any evidence that "successfully engage[s]" SDI's

contrary evidence, the court declines to include AVOs hired after December 31, 2016 in the conditional class. *See Grayson*, 79 F.3d at 1097.

### 2. Plaintiffs' "Bookend Weeks" Claim

Plaintiffs argue that SDI improperly paid AVOs during "bookend weeks"--*i.e.*, the week when deploying abroad and the week when returning stateside from the deployed location--and that this claim applies to all AVOs, whether hired before or after January 1, 2017. (Doc. # 25 at 7-8). This argument runs into two problems.

First, Plaintiffs do not explain what, if anything, about SDI's pay practices regarding so-called bookend weeks violates the FLSA. The only references to bookend weeks in Plaintiffs' declarations and briefing on this motion are conclusory statements that AVOs were not paid "properly" (or at the "proper rate") during bookend weeks. (Doc. # 21 at 3, 11); *see also* (Doc. # 21 at 39) ("SDI failed to pay me properly for the week when I deployed and the week when I returned stateside from my deployment."); (Doc. # 21 at 47) ("SDI failed to pay the AVOs properly for the week when they deployed and the week when they returned stateside from deployments."). Such cursory briefing would not meet the pleading standard of Federal Rule of Civil Procedure 8(a), much less the standard for establishing that a party is entitled to conditional class certification.[3]

Second, and more significantly, the only evidence Plaintiffs have submitted regarding SDI's pay practices for "bookend weeks" suggests that any claims arising out of those practices will be individual in nature and unsuitable for a collective action. In an email to an AVO, an SDI representative explains that an AVO's pay status (hourly vs. salaried) during bookend weeks

---

[3] Based on Plaintiffs' Complaint, it appears that their "bookend weeks" claim may really just be another way of claiming that they were not paid an overtime premium. *See* (Doc. # 1 at ¶ 28(d)) (referencing SDI's failure to pay AVOs "proper *overtime* compensation for all hours while traveling to and from deployments overseas") (emphasis added). In that case, Plaintiffs' "bookend weeks" claim simply collapses into their overtime claim.

depends on whether the AVO chooses to travel in the middle of a pay period or near the end of a pay period. (Doc. # 21 at 84). Thus, any claims based on SDI's pay practices during bookend weeks will likely turn on individual issues regarding when during a pay period an AVO chose to travel. Even if the court could discern some plausible FLSA violation in SDI's pay practices for bookend weeks (and, to be clear, it cannot), it is not convinced such claims would be suitable for a collective action.

### 3. Plaintiffs' "Comp Time" Claim

Plaintiffs also argue that SDI improperly substituted "comp time" for overtime hours worked at the improper rate and that this claim likewise applies to all AVOs, regardless of when they were hired. (Doc. # 25 at 7-8). This argument runs into the same problem discussed above—Plaintiffs do not explain in any detail how SDI's pay practices regarding "comp time" violate the FLSA. *See* (Doc. # 23 at 3, 11; Doc. # 25 at 4, 7-8). But more fundamentally, Plaintiffs have presented no evidence whatsoever in support of this allegation. Neither of Plaintiffs' declarations submitted in support of this motion mentions the "comp time" claim, and indeed, the allegation does not even appear in Plaintiffs' Complaint. The court will not permit an allegation that was mentioned for the first time in Plaintiff's certification motion--and there only cursorily and with no supporting evidence--to provide the basis for certifying a collective action.

### B. The Manner of Notice

The parties' final disagreement concerns the means used to notify potential class members of their right to opt in to this collective action. To facilitate notice, SDI has agreed to provide Plaintiffs with the names and last known addresses of potential class members, as well as those potential members' employment dates and status. (Doc. # 23 at 12). But SDI objects to Plaintiffs' request for the email addresses of potential class members. (*Id.* at 13).

SDI argues that there is no reason to believe that notice via U.S. mail would be inadequate to give potential class members timely and accurate notice of this suit. (*Id.*). It relies on *Miller v. JAH, LLC*, No. 5:16-CV-01543-AKK, 2018 WL 305819, at *3 (N.D. Ala. Jan. 5, 2018), where the court declined to authorize email notice of a collective action "because it [had] no basis yet to find that the traditional method of notice will not reach the prospective class members."

Plaintiffs argue that email notice is appropriate in this case because AVOs are frequently deployed around the world and thus do not have ready access to their last registered mailing address. (Doc. # 25 at 9). They rely on *Kiley v. MedFirst Consulting Healthcare Staffing, LLC*, 297 F. Supp. 3d 1260, 1267 (N.D. Ala. 2018), where the court authorized email notice of a collective action based on the plaintiffs' evidence that the defendant's employees were "highly mobile and often work away from home for long periods of time."

The court agrees with Plaintiffs that notice by both email and U.S. mail is appropriate in this case, for two reasons. First, AVOs spend a significant amount of time abroad and thus may not have timely access to mail sent to their permanent U.S. residences. Second, the court desires to expedite notice of this action due to the fact that the FLSA's statute of limitations continues to run against individual AVOs until they consent to opt in to this collective action. Accordingly, the court grants Plaintiffs' request to notify putative opt-in plaintiffs of this action by both email and U.S. mail.

### III. Conclusion

For the reasons explained above, Plaintiffs' motion to conditionally certify this case as a collective action (Doc. # 21) is due to be granted in part. The court agrees to conditionally

certify a collective action consisting of all AVOs employed by SDI between August 22, 2015[4] and January 1, 2017. SDI is directed to provide to Plaintiffs, in a mutually agreed upon format: (1) the names of all AVOs within the conditionally certified class; (2) their last known mailing address; (3) their last known email address; and (4) the dates during which they were employed by SDI and whether they are a current or former employee. The parties are directed to meet and confer regarding the content of the notice as well as the deadlines for distributing notice to class members and for class members to return signed consents. An order consistent with this Memorandum Opinion will be entered.

      **DONE** and **ORDERED** this September 5, 2018.

                                            _____
                                            **R. DAVID PROCTOR**
                                            UNITED STATES DISTRICT JUDGE

---

[4] During class-based discovery, the parties entered into a two-week tolling agreement for AVOs who had not already filed an opt-in notice. (Doc. # 23 at 7 n.8). Thus, SDI has placed the beginning of the class period at "three years and two weeks before the Court's order on [this] Motion." (*Id.* at 7; Doc. # 23-8 at 2). Plaintiffs agree that "the beginning of the lookback period is as [SDI] states." (Doc. # 25 at 4).